J-S72016-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: R.A.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.W., MOTHER | : | No. 1141 EDA 2017 |

Appeal from the Order Entered March 7, 2017
in the Court of Common Pleas of Philadelphia County,
Family Court at No(s):  CP-51-AP-0000893-2016,
CP-51-DP-0001345-2015

| | | |
|---|---|---|
| IN THE INTEREST OF: C.S.C., A MINOR | : | N THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.W., MOTHER | : | No. 1143 EDA 2017 |

Appeal from the Order Entered March 7, 2017
in the Court of Common Pleas of Philadelphia County,
Family Court at No(s):  CP-51-AP-0000894-2016,
CP-51-DP-0001346-2015

| | | |
|---|---|---|
| IN THE INTEREST OF: C.T.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.W., MOTHER | : | No. 1144 EDA 2017 |

Appeal from the Order Entered March 7, 2017
in the Court of Common Pleas of Philadelphia County,
Family Court at No(s):  CP-51-AP-0000895-2016,
CP-51-DP-0001347-2015

BEFORE:   BENDER, P.J.E., MUSMANNO, J., and STEVENS*, P.J.E.

MEMORANDUM BY MUSMANNO, J.:               **FILED FEBRUARY 14, 2018**

_____
* Former Justice specially assigned to the Superior Court.

C.W. ("Mother") appeals from the Orders granting the Petitions filed by the Philadelphia Department of Human Services ("DHS") to involuntarily terminate her parental rights to R.A.W. (d/o/b April 2006), and twins C.S.C. and C.T.C. (d/o/b December 2008) (collectively, "Children"),[1] pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b), and to change Children's permanency goals to adoption pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6351. We affirm.

The trial court aptly summarized the factual and procedural history of this case, which we adopt for the purpose of this appeal. *See* Trial Court Opinion, 6/22/17, at 1-5.

On appeal, Mother raises the following questions for our review:

1. Whether the trial court's ruling to involuntarily terminate [Mother's] parental rights to [Children] was not supported by clear and convincing evidence establishing grounds for involuntary termination?

2. Whether the trial court's decision to change [Children's] permanency goal from reunification with their parent to adoption was not supported by clear and convincing evidence that such decision would best protect [] [C]hildren's needs and welfare?

Mother's Brief at 5.

We review an appeal from the termination of parental rights in accordance with the following standard:

---

[1] In separate Orders, the trial court also terminated the rights to the fathers and any unknown fathers of Children. No individual claiming to be the putative father has filed an appeal.

In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Termination of parental rights is controlled by section 2511 of the Adoption Act. *See* 23 Pa.C.S.A. § 2511. The burden is upon the petitioner "to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). "[C]lear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citation and quotation marks omitted). Further, the "trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If the competent evidence supports the trial court's findings, "we will affirm[,] even if the record could also support the opposite result." *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa. Super. 2003).

Satisfaction of any one subsection of section 2511(a), along with consideration of section 2511(b), is sufficient for the involuntary termination of parental rights. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en*

*banc*). In this case, we will review the trial court's decision to terminate Father's parental rights based upon sections 2511(a)(1) and (b), which state the following:

**§ 2511. Grounds for involuntary termination.**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

Parental rights may be terminated pursuant to [s]ection 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties. … [P]arental duty is best understood in relation to the needs of a child. … [T]his court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty … requires a continuing interest in the child and a genuine effort to maintain communication and association with the child.

*In the Interest of J.T.*, 983 A.2d 771, 776-77 (Pa. Super. 2009) (quotation marks and citations omitted). Further,

> [a] parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (citations omitted).

In her first claim, Mother contends that the trial court erred in granting the Petitions to involuntarily terminate her parental rights to Children, because DHS did not satisfy, by clear and convincing evidence, that her parental rights should be terminated under section 2511(a)(1). Mother's Brief at 18. Mother argues that she regularly and consistently visited Children, loved Children, completed a parenting skills class, attended therapy for her bipolar and depression disorders, tested negative for drugs and alcohol, and was gainfully employed. *Id.* at 18-19. Mother concedes that while she did not have adequate housing for Children, she substantially complied with the family service plan objectives and did not evidence a settled purpose for relinquishing her parental rights. *Id.* at 19.

Here, the trial court thoroughly considered the facts and determined that Mother failed to perform her parental duties for the requisite six-month period. *See* Trial Court Opinion, 6/22/17, at 5-6. After our careful review of the trial court's application of the law to the facts of this case, there is no

reason to disturb the trial court's conclusions that Mother failed to perform her parental duties with regard to Children, and that she failed to sustain her burden of proof. *See id.* Thus, the trial court's determinations regarding section 2511(a)(1) are supported by competent, clear and convincing evidence in the record, and we affirm on the reasoning set forth in its Opinion. *See id.*; *see also In re B., N.M.*, 856 A.2d 847, 858 (Pa. Super. 2004) (concluding that father showed a settled purpose of relinquishing his parental rights where he sat idle for most of child's life, and that father's wish to not have his parental rights terminated was insufficient to protect those rights without affirmatively fostering a parental relationship with child).

Regarding section 2511(b), the trial court inquires whether the termination of parental rights would best serve the developmental, physical and emotional needs and welfare of the child. *See In re C.M.S.*, 884 A.2d 1284, 1286-87 (Pa. Super. 2005). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *Id.* at 1287 (citation omitted). The court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.*; *see also In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (stating that "the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial

relationship."). "[C]ourts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *In re T.S.M.*, 71 A.3d 251, 268 (Pa. 2013). In conducting a bonding analysis, the court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. *In re Z.P.*, 994 A.2d at 1121. Finally, although the focus in terminating parental rights under section 2511(a) is on the parent, it is on the child under section 2511(b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*); *see also In re Z.P.*, 994 A.2d at 1125 (stating that, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.").

Mother contends that the trial court erred in determining that termination served Children's best interests under section 2511(b). Mother's Brief at 23. Mother argues that that there was no evidence presented demonstrating a lack of a bond with Children, or that termination would best serve Children's interests. *Id*. at 23-24. Mother asserts that DHS's caseworker should not have been permitted to offer opinion testimony regarding Mother's lack of a bond with Children. *Id.* at 24. Mother maintains that Children would be significantly harmed if her parental rights were terminated. *Id.*

Here, the trial court found that the evidence demonstrated, by clear and convincing evidence, that Children have no bond with Mother. *See* Trial

Court Opinion, 6/22/17, at 7-8. The trial court's determination that Mother cannot provide for Children's needs and welfare, and that their best interests are served by the termination of Mother's parental rights, is supported by competent, clear and convincing evidence in the record. *See id.*; *see also In re J.L.C.*, 837 A.2d 1247, 1249 (Pa. Super. 2003) (stating that parent must put himself in a position to assume daily parenting responsibilities so that he could develop a bond with child). Moreover, contrary to Mother's claim, the testimony of caseworkers may be used in conducting a bonding analysis. *See In re Z.P.*, 994 A.2d at 1121. We, therefore, conclude that the trial court did not abuse its discretion in terminating the parental rights of Mother under section 2511(b), and affirm on the basis of the trial court's Opinion. *See* Trial Court Opinion, 6/22/17, at 7-8.[2]

Orders affirmed.

---

[2] While Mother raised the issue of the goal change in her Statement of Questions, she has not set forth a separate argument in her appellate brief. Thus, she waived any challenge to the goal change. *See* Pa.R.A.P. 2119(a). Even if Mother had properly preserved this challenge, we would conclude that the trial court did not abuse its discretion in changing the goal to adoption, as it was in Children's best interests. *See In re S.B.*, 943 A.2d 973, 978 (Pa. Super. 2008) (stating that in a change of goal proceeding, "[t]he trial court must focus on the child and determine the goal with reference to the child's best interests, not those of the parents."); *see also In re R.M.G.*, 997 A.2d 339, 347 (Pa. Super. 2010) (noting that under section 6351, "[s]afety, permanency, and well-being of the child must take precedence over all other considerations[.]") (emphasis omitted).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/14/18

THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

FAMILY COURT DIVISION

| | | |
|---|---|---|
| IN RE: R.A. W. | : | CP-51-DP-0001345-2015 |
| | : | CP-51-AP-0000893-2016 |
| | : | |
| IN RE: C.S.C. | : | CP-51-DP-0001346-2015 |
| | : | CP-51-AP-0000894-2016 |
| | | |
| IN RE: C.T.C. | : | CP-51-DP-0001347-2015 |
| | : | CP-51-AP-0000895-2016 |
| | | |
| | : | |
| APPEAL OF: C.W., Mother | : | Superior Court |
| | : | No. 1141 EDA 2017 |
| | : | No. 1143 EDA 2017 |
| | : | No. 1144 EDA 2017 |

OPINION

**Younge, J.**

This Appeal arises from this Court's Order on March 7, 2017, terminating the parental rights of C.W. ("Mother"), pursuant to the petitions filed on behalf of the Department of Human Services ("DHS") by the City of Philadelphia Solicitor's Office. John Capaldi, attorney for Mother, filed a timely appeal from the January 19, 2017 order terminating mother's parental rights including an attached Concise Statement of Errors, Affidavit of Service, and other related documents necessary to perfect this Appeal.

**Factual and Procedural Background:**

A summary of the relevant procedural history is set forth as follows:

On May 28, 2013, the Department of Human Services (DHS) received a General Protective Services (GPS) report which alleged that R.A.W. was being inappropriately disciplined by his Mother. The report alleged Mother did not provide the children with appropriate supervision. The report also stated the home was extremely dirty with trash strewn throughout the home. The home was infested with roaches and bed bugs. The report also stated there were a number of people living in the home and Mother used drugs in the home. Mother fed the children junk food all day, R.A.W. was obese and working with a nutristionist at school. It was also reported R.A.W. stated he did not want to reside in the home but wanted to ensure C.S.C. and C.T.C.'s safety. The report was substantiated.

On May 31, 2013. DHS received a GPS report which alleged R.A.W. was not picked up from school. Mother normally retrieved R.A.W. from school which dismissed at 3:00 p.m. Attempts were made to contact Mother. Multiple calls with proceeding immediately to voicemail. A school aide traveled to the family home located at 5913 Tacony Street and no answered the door. The Philadelphia Police Department was contacted and Mother arrived to the school at the same time as the police. Mother was permitted to take R.A.W. home with her. The report also alleged R.A.W. was enrolled at Sullivan School in the first grade and received mental health services through Northwestern Human Services (NHS). The report was substantiated.

On July 16, 2013, In-Home Protective Services (IHPS) was implemented in the home through Presbyterian Children's Village.

On September 7, 2013, DHS received a GPS report which alleged that Mother did not know R.A.W.'s whereabouts, that Mother was depressed, stressed and crying. Mother reported that she transported R.A.W. to the home of his paternal Grandmother to stay for a few days. Paternal Grandmother took R.A.W. to the home of Father and no one could located R.A.W. The report alleged Mother contacted Paternal Grandmother and Paternal Grandmother reported a different story. Paternal Grandmother stated that Mother left R.W. at her home three or four days prior while Paternal Grandmother was not in the home. Paternal Grandmother was notified that R.A.W. was left in the home alone by a neighbor and went to retrieve R.A.W. R.A.W. stated he did not want to go back to the home of Mother because he did not feel safe and R.A.W. was transported to a local police precinct a the instruction of Paternal Grandmother. The police released R.A.W. to Mother. R.A.W. was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD), Oppositional Defiant Disorder (ODD), history of trauma, that R.A.W had been receiving services through Carson Valley for ten months. Mother did not appear capable of caring for herself or R.A.W, C.S.C. and C.T.C. The report alleged Mother's train of thought was illogical and not based on reality at the time. Mother was employed and used time outs and yelling as forms of discipline. The report was substantiated.

On November 22, 2013, DHS received a GPS report which alleged that R.A.W. was being neglected by Mother as a result of lack of supervision. Mother rode Southeastern Pennsylvania Transportation Authority (SEPTA) bus with R.A.W. to the Erie-Torresdale station and then allowed R.A.W. to continue on the bus to school alone. R.A.W. traveled alone to school and would visit the corner store to buy snacks prior to entering the school. Mother would contacted the school by telephone to inquire about R.A.W.'s arrival to school. The report alleged Mother alluded that the family was homeless. DHS offered vouchers for clothes and transportation if she could verify that she was homeless with a letter. Mother was advised it was inappropriate to leave R.A.W. on the bus unsupervised. Mother was offered assistance with R.A.W. and travel to school. R.A.W. was often late or absent to school, and that C.S.C. and C.T.C. also resided in the home. This report was substantiated.

On December 4, 2014, the family was discharged from IHPS.

On January 29, 2015, DHS received a GPS report which alleged that R.A.W., C.S.C. and C.T.C. were locked outside the home daily when they returned home from school. The children were sometimes outside for as long as two hours. The report stated R.A.W., C.S.C. and C.T.C. could be heard screaming for their Mother to allow them in the home. At times, Mother was present in the home and refused to allow them entry in the home. The report stated Mother would leave the home returned hours later. This report was substantiated.

2

On April 30, 2015, DHS received a GPS report which alleged that R.A.W. was left alone outside the home for several hours on April 29, 2015. R.A.W. was found sleeping on the hood of a vehicle. The report alleged that Mother went to work around 8:30 and R.A.W. was left unattended. The home was found to be filthy. Dirty clothes and trash strewn around the home. There was no edible food in the home. The food in the refrigerator was old and inedible. The report alleged that there were guns and drugs were found in the home. R.A.W. had poor hygiene and there were concerns about R.W. basic needs being met in the home. R.A.W. was taken to St. Christopher's Hospital for Children to be checked for conjunctivitis, that R.A.W. was diagnosed with pink eye. R.A.W. was fearful of being in the home alone and getting Mother in trouble. R.A.W. was released to Father.

On May 1, 2015, DHS learned that Mother smoked cigarettes and marijuana in the home. R.A.W., C.S.C. and C.T.C. were left in the home unsupervised. DHS also learned C.S.C. and C.T.C. would be retained in the first grade because of academic issues and inconsistent homework. C.S.C. was a patient of a speech therapist and was more academically deficient than C.T.C. Furthermore, DHS learned C.S.C. and C.T.C. frequently had soiled uniforms and smelled of urine. C.S.C. used the restroom often and suffered a urinary problem. C.S.C. and C.T.C were often tardy to school often being dropped off by Mother.

On May 3, 2015, DHS made a visit to Mother's home. DHS observed the home to be in deplorable condition. DHS observed there were clothes, shoes, toys and paper strewn in the home. There were old food stains on the carpets in the living room. DHS reported Mother stated R.A.W. was old enough to be outside alone. Additionally, Mother stated there was no harm in R.A.W. being outdoors alone or R.A.W. supervising his younger siblings, C.S.C. and C.T.C.

At the Adjudicatory Hearing held on June 9, 2015, the Court adjudicated the children dependent and committed them to placement with DHS. The Court referred R.A.W., C.S.C. and C.T.C. to the Behavioral Health System (BHS) for consultation/evaluation and referred Mother to the Clinical Evaluation Unit (CEU) for a drug and alcohol screen, diagnosis, assessment, and monitoring. Mother was also referred to the Achieving Reunification Center (ARC) for appropriate services.

On July 28, 2015, a report was submitted that stated there had been minimal compliance by Mother with the permanency plan provided for her. Mother was not compliant with the ARC program, parenting classes, or CEU and refused to sign releases. The Court re-referred Mother to CEU for a drug screen, assessment, and monitoring. The Court ordered Mother to sign releases of information and ordered Mother have no telephone contact with RAW., C.S.C. and C.T.C.

On October 27, 2015, the Court referred Mother to CEU for an assessment and a drug screen to include three randoms prior to the next court date and ordered her to comply with mental health treatment.

On October 27, 2015, CEU progress reported Mother was reported positive for alcohol, and marijuana.

On June 23, 2016, a report was submitted that stated there had been minimal compliance by Mother with the permanency plan. The Court referred Mother to CEU for a drug and alcohol screen, assessment, monitoring and three random drug screens prior to the next court date. The Court further ordered Mother to sign all releases and ordered Mother to provide her mental health documentation to the DHS social worker.

On June 23, 2016, Mother tested positive for alcohol and creatinine.

On June 23, 2016, a revised a Family Service Plan (FSP) meeting was held. The FSP goal was Adoption. The FSP objective for Mother was to stabilize mental health; to participate in mental health evaluation; to comply with all treatment recommendations including therapy and /or medication as prescribed; to sign an authorization form to allow CYD to obtain copies of evaluations and progress reports; to provide adequate and safe living conditions; to locate, maintain,and occupy suitable housing for the family with suitable space, heat and all other operable utilities; to maintain the relationship between parent and child through participation in placement activities and through regular visitation; to keep all visits and maintain regular contact with the children; to met regularly with the agency social worker and follow through with the Individual Service Plan (ISP); to achieve and maintain recovery for drug and/or alcohol problems; to participate in an evaluation for drug/alcohol use; to comply with all treatment recommendations of the provider; and to sign an authorization form to allow CYD to obtain copies of evaluations and progress reports. Mother attended the meeting.

On August 3, 2016, a revised FSP meeting was held The FSP goal remained Adoption. The FSP parental objective were to enroll in and complete parenting classes; to make their whereabouts known to the agency or DHS; and to enroll in and complete anger management. There were additional objectives for Mother to stabilize mental health; to participate in a mental health evaluation; to comply with all treatment recommendations including therapy and or medication as prescribed; to sign an authorization form to allow CYD to obtain copies of evaluations and progress reports; to improve the relationship between parent and the children; to regularly attend couseling to improve communication and to develop a better relationship; to provide adequate and safe living conditions; to locate, maintain and occupy suitable housing for the family with suitable space,heat, and all other operable utilities; to maintain the relationship between parent and the child through participation in placement activities and through regular visitation; to keep all visits and maintain regular contact with the children; to meet regularly with the agency social worker and follow through with the ISP; to achieve and maintain recovery from drug/alcohol problems; to participate in an evaluation for drug/alcohol abuse; to comply with all treatment recommendations of the provider; and to sign an authorization form to allow CYD to obtain copies of evaluations and progress reports. Mother did not attend the meeting.

In August 2016, DHS learned that Mother had been non-compliant with individual and group therapy.

DHS reported Mother admitted that she continued to use drugs, failed to be substantially compliant with her objectives and had not demonstrated she was able to safely and appropriately car for R.W., C,S,C and C.T.C.

The matter was the listed on a regular basis before judges of the Philadelphia Court of Common Pleas, Family Court Division- Juvenile Branch pursuant to section 6351 of the Juvenile Act, 42 Pa. C.S.A. § 6351, and evaluated for the purpose of reviewing the permanency plan of the child.

In subsequent hearings, the Dependency Review Orders reflect the Court's review and disposition as a result of evidence presented, primarily with the goal of finalizing the permanency plan.

On March 7, 2017, during the Termination of Parental Rights hearing for Mother, the Court found by clear and convincing evidence that Mother's parental rights, R.A.W., C.S.C and C.T.C.

should be terminated pursuant to the Juvenile Act. Furthermore, the Court held it was in the best interest of the children that the goal be changed to Adoption.

The appeal of Mother is as follows:

**Issues**

1) Whether under the Juvenile Act, 42 Pa. C.S. section 6351, and 55 Pa. Code Section 3130.74, in accordance with the provisions of the Federal Adoption and Safe Families Act, 42 U.S.C. Section 671 et seq., reasonable efforts were made to reunite the Mother with her children and whether the goal change to Adoption was the disposition well suited to the safety, protection and physical, mental and moral welfare of the children.

2) Whether it was proven by clear and convincing evidence that Mother's parental rights should be terminated under Sections 2511 (a)(2) and 2511(b).

**Discussion**

The grounds for involuntary termination of parental rights are enumerated in the Adoption Act at 23 Pa. C.S. § 2511. Under this statute, the trial court must engage in a bifurcated process in which it initially focuses on the conduct of the parent under § 2511(a). *In the Interest of B.C.*, 36 A.3d 601 (Pa. Super 2012). If the trial court determines that the parent's conduct warrants termination under § 2511(a), it must then engage in an analysis of the best interest of the child under § 2511(b). *Id.*

In the present case, mother's parental rights were terminated based on §§2511(a), (1), (2), (5), (8) and §2511(b).

In proceedings to involuntarily terminate parental rights, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for termination. *In re Adoption of Atencio,* 650 A.2d 1064 (Pa. 1994). The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction without hesitation of the truth of the precise facts in issue." *In re J.D.W.M.*, 810 A2d 688, 690 (Pa.Super. 2002).

To satisfy § 2511(a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least six (6) months prior to filing of the termination petition, which reveal a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. It is clear from the record that for a period of six (6) months leading up to the filing of the Petition for Involuntary Termination, mother failed to perform parental duties for the children. The Court found by clear and convincing evidence that the mother refused or failed to perform her parental duties.

In the instant matter, the social worker testified Mother lacked the ability to meet the needs of R.A.W., C.S.C. and C.T.C. due to lack of housing issues and inappropriate supervision of her children, drug and alcohol issues, untreated mental health issues, lack of therapy and failure to adhere medication prescriptions. (N.T. 3/7/17, pgs. 67, 69-71 87) Mother's SCP objectives outlined addressing issues of stable housing, truancy and mental health. (N.T. 3/7/17, pg. 21) Testimony of the social worker revealed during the entire life of the case, from June 2015 until the present hearing, Mother failed to be fully compliant with the goal of stabilizing her goals and

5

objectives. (N.T. 3/7/17 pgs. 55-57, 66) Social worker testified lack of consistency in Mother's stability of her mental health and drug and alcohol treatment and therapy. (N.T. 3/7/17, pgs. 55-57) The social worker testified to the best of their ability, DHS provided Mother with the services she needed in order to reunify her family. (N.T. 3/7/17, pg. 65)

Mother admitted in her testimony of a diagnosis of bipolar disorder depression. (N.T. 3/7/17 pgs. 59,76,77) Mother was unable to provide the Court with any documentation that would substantiate a diagnosis treatment completion from any therapist or treatment program she attended. (N.T. 3/717, pgs. 61-62) Mother testified she was unable to remember or recall the last time she saw a psychiatrist or the name of her medication prescription. (N.T. 3/7/17, pgs. 80, 87)

A parent has an affirmative duty to act in her children's best interest. "Parental duty requires that the parent not yield to every problem, but must act affirmatively, with good faith interest and effort, to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." *In re Dale A., II*, 683 A.2d 297, 302 (Pa. Super. 1996). In reference to the parental contact, "to be legally significant, the contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship, and must demonstrate and willingness and capacity to undertake the parenting role". *In re D.J.S.*, 737 A2d 283, 286 (Pa.Super. 1999) (quoting *In re Adoption of Hamilton*, 549 A.2d 1291, 1295 (Pa.Super. 1988)).

In the present matter, during the twenty one months (21) the children have been in DHS care testimony of social worker stated the supervised visits Mother attended with R.A.W., C.S.C, and C.T.C., were not expanded to include unsupervised visits. (N.T. 3/7/17, pg. 57) Testimony of the social worker was there were concerns about making changes to Mother's visitation schedule due to her failure to comply with mental health and drug and alcohol treatment. (N.T. 3/7/17, pg. 57) The social worker's testimony revealed Mother's visits were suspended for a period of time due to inappropriate statements made during visits with R.A.W. (N.T. 3/7/17, pgs. 57-60, 71, 88) Furthermore, social worker's testimony reveal Mother was frequently late in her arrival to scheduled visits with the children. (N.T. 3/7/17, pgs. 59- 60).Furthermore, social worker testified there were allegations of a GPS report Mother smoked illegal substances in the presence of R.A.W., C.S.C. and C.T.C. (N.T. 3/7/17, pg. 65)

Section 2511 (a)(2) requires that "repeated and continued incapacity, abuse neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for her physical or mental well-being and the condition and causes of the incapacity, abuse, neglect, or refusal, cannot or will not be remedied by the parent. 23 Pa. C.S. § 2511 (a)(2).

Termination of parental rights under §2511 (a)(2) is not limited to affirmative misconduct but may include acts of refusal, as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa .Super. 2002).

The Court's decision was reflective of testimony which revealed a lack of documentation Mother was receiving treatment for her bipolar depression anxiety diagnosis. (N.T. 3/7/17, pg. 81) Moreover, the Court found Mother's repeated and continued reporting of alleged physical abuse of the children while in placement due to her mental health instability concerning. (N.T. 3/7/17, pg. 81).

§2511 (a)(5) requires that :

> (5)     The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of parental rights would best serve the needs and welfare of the child.

§2511 (a)(8) states:

> (8)     The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, twelve (12) months or more has elapsed from the date of the removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of the parental rights would serve the best needs and welfare of the child.

The evidence as discussed above pursuant to §2511 (a)(5) and (a)(8), equally support the Court's conclusion to terminate mother's parental rights.

In order to terminate the parental rights, the party seeking termination must prove by clear and convincing evidence that the termination is in the best interest of the child. 23 Pa. C.S. §2511 (b); _In re Bowman_, 647 A.2d 217 (Pa. Super. 1994). The best interest of the child is determined after consideration of the needs and welfare of the child. The trial court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of this parental rights to determine if the evidence, in the light of the totality of the circumstances, clearly warrant involuntary termination.

When determining the best interest of the child, many factors are to be analyzed, "such as love, comfort, security, security and stability. _In re Adoption of T.B.B._, 835 A.2d 387, 397 (Pa. Super. 2003). Another factor that a court is to consider is what, if any, bond exist for the child. _In re Involuntary Termination of C.W.S.M and K.A.L.M._, 839 A.2d 410, 415 (Pa. Super 2003).

Pursuant to Section 2511(b), the trial court must take account whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. _In re C.S.,_ 761 A.2d 1197(Pa. Super. 2000).

In the instant matter, the testimony of social worker established R.A W., C.S.C. and C.T.C. depend on their foster parent to meet their day-to-day needs. (N.T. 3/7/17, pgs. 60-62)  Social worker testified the children's medical needs were current, school attendance was improved. (N.T. 3/7/17, pg. 62)Social worker's testimony was R.A.W., C.S.C. and C.T.C. were doing well and   C.S.C. and C.T.C. would not suffer any irreparable emotional harm if Mother's parental rights were terminated. (N.T. 3/7/17, pgs. 62-64) The social worker testified R.A.W. would suffer harm that could be reconciled through therapy. (N.T. 3/7/17, pgs. 63-64). Furthermore, testimony of the social worker was R.A.W., C.S.C. and C.T.C. could not safely be reunified with Mother and it was in the best interest of the children to be adopted. (N.T. 3/7/17, pgs. 60, 66)

The Court stated concerns about lack stability of Mother's untreated mental health, drug and alcohol issues. (N.T. 3/7/17, pg. 92) The Court also stated concern for the long term stability for

7

the children in this particular matter. (N.T. 3/7/17, pg. 92) The Court reasoned Mother's failure to provide documentation of mental health drug and alcohol treatment compliance. (N.T. 3/7/17, pgs. 73, 84, 93). The Court found convincing the testimony the current foster parent for R.A.W., C.S.C. and C.T.C. provided a nurturing and stable environment with no housing, medical neglect or truancy issues. (N.T. 3/7/17, pg. 94) Hence, the Court concluded it would be in the best interest of the children to be freed for adoption. (N.T. 3/7/17, pg. 92-4).

The Trial Court found by clear and convincing evidence that the Department of Human Services met their statutory burden pursuant to 23 Pa. C.S.A. § 2511 (a) (2),(5), (8) & (b) and that it was in the best interest of the children, to change their goal to adoption (N.T. 3/7/17, pgs. 92-93)

**Conclusion:**

For the foregoing reasons, the Court finds that the Department of Human Services met its statutory burden by clear and convincing evidence regarding the termination of parental rights pursuant to 23 Pa. C.S. §2511 (a),(1), (2), (5) and (8) and §2511(b). Furthermore, the Court finds that its ruling will not cause R.A.W., C.S.C. and C.T.C to suffer irreparable harm and it is in the best interest of the children based on the testimony regarding the children's safety, protection, mental, physical and moral welfare, to terminate Mother's parental rights.

Accordingly, the Trial Court's Order entered on March 7, 2017, terminating the parental rights of Mother, (      ), should be properly affirmed.

C.W.

By the Court:

_Lyris F. Younge_

_____

J.

8

THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

FAMILY COURT DIVISION

| | | |
|---|---|---|
| IN RE: R.A.W. | : | CP-51-DP-0001345-2015 |
| | : | CP-51-AP-0000893-2016 |
| | : | |
| IN RE: C.C. | : | CP-51-DP-0001346-2015 |
| | : | CP-51-AP-0000894-2016 |
| | | |
| IN RE: C.C. | : | CP-51-DP-0001347-2015 |
| | : | CP-51-AP-0000895-20156 |
| | | |
| | : | |
| APPEAL OF: C.W., Mother | : | Superior Court |
| | : | No. 1141  EDA 2017 |
| | : | No. 1143  EDA 2017 |
| | : | No. 1142  EDA 2017 |

---

PROOF OF SERVICE

I hereby certify that this court is serving, today, June 12, 2017 the foregoing Opinion, by regular mail, upon the following person(s):

Rosa Parks, Esquire
City of Philadelphia Law Department
1501 Arch Street, 16th Floor
Philadelphia, PA 19107

Gary Server, Esquire
52103 Delaine Landing Road
Philadelphia, PA 19114

John Capaldi, Esquire
1812 Fox Chase Road
Philadelphia, PA 19152-1827

BY THE COURT

_Lyris F. Younge_

---

Honorable Lyris F. Younge